IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

RICKIE E. WILDER,
      Plaintiff,

vs.                                                  Case No.:  3:17cv239/RV/EMT

ARAMARK SERVICES, INC.,
d/b/a ARAMARK CORRECTIONAL SERVICES, LLC,
and JAMES HANNON,
      Defendants.
_____/

## REPORT AND RECOMMENDATION

This matter is before the court on Defendants' joint motion to dismiss the
Amended Complaint (ECF No. 45) and Plaintiff's response in opposition (ECF No.
59).  The case was referred to the undersigned for the issuance of all preliminary
orders and any recommendations to the district court regarding dispositive matters.
*See* N.D. Fla. Loc. R. 72.2(C); *see also* 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P.
72(b).  After reviewing the parties' submission and the relevant law, the undersigned
concludes Defendants' motion to dismiss should be denied.

I.      BACKGROUND

Plaintiff Rickie E. Wilder ("Wilder"), proceeding pro se and in forma pauperis,
was a pre-trial detainee at the Escambia County Jail ("Jail") when he commenced this
case, but he is now an inmate of the Florida Department of Corrections.  Wilder

commenced this case on April 12, 2017, by filing a civil rights complaint under 42 U.S.C. § 1983 (ECF No. 1). Wilder named three Defendants: (1) Aramark Services, Inc., d/b/a Aramark Correctional Services, LLC ("Aramark"), (2) James Hannon ("Hannon"), and (3) Allison Burgess (*see id.*). Wilder claimed that Defendants subjected him to cruel and unusual punishment and violated his rights to due process and equal protection by failing to provide adequate medical treatment and failing to comply with his medically prescribed diet while he was an inmate of the Escambia County Jail ("Jail"), in violation of the Fourth, Sixth, Eighth, and Fourteenth Amendments (*see id.*).

Defendant Burgess filed a motion to dismiss (ECF No. 12), and Wilder filed a response in opposition (ECF No. 15). On September 19, 2017, the court granted Burgess' motion to dismiss (*see* ECF Nos. 21, 25). The court dismissed, with prejudice, all of Wilder's claims against Burgess (*id.*). The court also dismissed, with prejudice, Wilder's Fourteenth Amendment equal protection claim and his Fourth, Sixth, and Eighth Amendment claims against Defendants Aramark and Hannon, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) (*id.*). The court dismissed Wilder's Fourteenth Amendment due process claim against Aramark, without prejudice to Wilder's filing an amended complaint (*id.*).

Wilder filed an Amended Complaint on November 14, 2017, naming Aramark and Hannon as Defendants (ECF No. 31 at 1–2).[1]  Wilder claims that while he was housed at the Jail from April of 2017 to September of 2017, Defendants were deliberately indifferent to his need for a medically prescribed diabetic diet, in violation of the Fourteenth Amendment (*id.* at 5–8).  Wilder seeks injunctive relief and monetary damages in the amount of $25,000.00 (*id.* at 8).

On May 25, 2018, Aramark and Hannon filed a motion to dismiss, contending Wilder's claims are subject to dismissal for failure to state a claim upon which relief may be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6) and 28 U.S.C. § 1915(e)(2)(B)(ii) (ECF No. 45).  Wilder filed a response in opposition on August 27, 2018 (ECF No. 59).

## II.    STANDARD OF REVIEW

Motions to dismiss for failure to state a claim are governed by Rule 12(b)(6) of the Federal Rules of Civil Procedure.  In applying that rule, the allegations of the complaint are taken as true and are construed in the light most favorable to the plaintiff.  *See* Davis v. Monroe Cnty. Bd. of Educ., 120 F.3d 1390, 1393 (11th Cir.

---

[1] The page numbers referenced in this Report and Recommendation reflect the page numbers automatically assigned by the court's electronic docketing system rather than those of the original documents.

1997).  "Pro se pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed."  <u>Boxer X v. Harris</u>, 437 F.3d 1107, 1110 (11th Cir. 2006).  The court may consider documents attached to a complaint or incorporated into the complaint by reference, and matters of which a court may take judicial notice.  *See* <u>Tellabs, Inc. v. Makor Issues & Rights, Ltd.</u>, 551 U.S. 308, 322, 127 S. Ct. 2499, 168 L. Ed. 2d 179 (2007); <u>Saunders v. Duke</u>, 766 F.3d 1262, 1272 (11th Cir. 2014); <u>Brooks v. Blue Cross & Blue Shield of Fla., Inc.</u>, 116 F.3d 1364, 1369 (11th Cir. 1997) ("[W]here the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal . . . .").

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quotation and citation omitted).  A claim is plausible on its face where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citation omitted).  Plausibility means "more than a sheer possibility that a defendant has acted unlawfully."  *Id.*

"Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quotation and citation omitted).

The determination of whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679 (citation omitted). The pleader is not entitled to relief "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Id.* (citing Fed. R. Civ. P. 8(a)(2)). The court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 678 (quotation and citation omitted). And "bare assertions" that "amount to nothing more than a "formulaic recitation of the elements" of a claim "are conclusory and not entitled to be assumed true." *Id.* at 681 (quotation and citation omitted). Stated succinctly:

> Pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Id.* at 679.

## III.    WILDER'S FACTUAL ALLEGATIONS

The Amended Complaint and its attached documents set forth the factual allegations that follow (*see* ECF No. 31). Wilder has been a diabetic since 2006. He is required to follow strict dietary restrictions due to his diabetes. Aramark provides meals to inmates of the Jail and is under contract to meet the medical dietary needs of inmates. Hannon is an employee of Aramark, and is the supervisor/director of food service at the Jail. Wilder was incarcerated at the Jail in April of 2017, and remained there until September of 2017. Dr. Smith and at least two other doctors prescribed Wilder a diabetic diet. Wilder filed grievances with Hannon and Aramark requesting that he be provided meals which complied with his medically prescribed diet. When Wilder complained to Lieutenant Walker, a member of the Jail's security staff, that his grievances were not being answered, Walker responded that he contacted Hannon and advised him to check the "kiosk" (apparently, inmates at the Jail are permitted to communicate grievances by filing written grievances or by electronically posting grievances onto a kiosk). Wilder inquired of another Jail employee, "who is in charge of the kitchen and Aramark here at Escambia County Jail?" The Jail official responded, "Jim Hannah [sic]—kiosk—spoke w/Aramark and there is nothing that can be done about your situation." Wilder's commissary privileges were restricted due to his medically prescribed diet. Wilder filed a grievance with the Jail's commissary

director requesting that diabetic items be made available from the commissary. The commissary director responded, "I agree that we should have some diabetic accessible items and will work with medical to procure these items. Thank you for letting me know the situation." Aramark and Hannon did not provide Wilder a diet that complied with his medically prescribed diet. Aramark and Hannon consistently provided Wilder with meals containing items which did not comply with his medically prescribed diet. Wilder had no other options than to eat the food provided by Hannon and Aramark, which caused severe fluctuations in his blood sugar levels. At one point, Wilder was transported to a local hospital because his blood sugar level was over 900. The treating physician ordered a diabetic diet. Major Nash, a member of the Jail's security staff, showed the doctor's order to Hannon. Neither Aramark nor Hannon made any attempt to comply with the diet prescribed by Wilder's doctors.

IV.    DISCUSSION

Aramark and Hannon contend this action should be dismissed for failure to state a claim because Aramark was not acting as, or in concert with, a state actor; therefore, neither Aramark, nor Hannon as its employee, can be sued under § 1983 (ECF No. 45). Defendants also contend Wilder has not included any allegation that it was either Aramark's or Hannon's policy to deny him meals or serve him foods he could not eat,

nor has Wilder alleged a series of events from which the court could infer the existence of such a policy (*id.*).  Defendants contend neither of them acted, or failed to act, pursuant to a policy or custom attributable to either of them, and neither of them had any control or decision-making authority over whether Wilder received an alternative meal or a diet based upon his alleged medical condition (*id.*). Defendants additionally argue that Wilder's allegations are insufficient to state a constitutional violation (*id.*).   Defendants contend Wilder's medical needs were otherwise accommodated through medical treatment (*id.*).  They further contend Wilder has not provided any details regarding how often and to what extent he encountered foods he could and could not eat (*id.*).

In Wilder's Response to the motion to dismiss, he contends Aramark qualifies as a "state actor," for purposes of § 1983, because Aramark has been delegated a public function by a municipality, specifically, Escambia County, and thus satisfies the "public function test" for state action (*see* ECF No. 59 at 13–14).  Wilder contends Escambia County has a duty to provide nutritionally adequate food to inmates of the Jail, and the County contracted with Aramark to perform this governmental function (*id.*).  Therefore, Aramark is serving a public function by providing daily meals to inmates of the Jail (*id.*).  Wilder further argues there is a sufficiently close nexus

between the County and Aramark's action such that Aramark's conduct is attributable to the municipality, thus satisfying the "joint action" or "close nexus" test for state action (*id.* at 15–17). Wilder argues that Aramark's provision of food to Jail inmates flows directly from the County's obligation to do so and is performed under the County's supervision (*id.*). Wilder argues that Aramark's role as a food provider is similar to that of a private medical care provider that is paid to provide medical care to inmates at state and local facilities (*id.*). Wilder argues that courts have consistently held that private medical providers are acting under color of state law when providing medical care, and the same rule applies here (*id.*). Wilder further argues that other district courts have held that Aramark is acting under color of state law when it provides food to state inmates (*id.* at 16–17).

With respect to the substance of his constitutional claim, Wilder contends that for six months, Defendants denied him a diet that was prescribed by medical staff to control his diabetes, and the meals he was forced to consume were nutritionally inadequate in relation to his medical needs (ECF No. 59 at 20).

"In order to prevail on a civil rights action under § 1983, a plaintiff must show that he or she was deprived of a federal right by a person acting under color of state

law." Griffin v. City of Opa-Locka, 261 F.3d 1295, 1303 (11th Cir. 2001).  A private

party generally does not act under color of state law and is therefore not subject to suit

under section 1983.  *See* Dennis v. Sparks, 449 U.S. 24, 27–29, 101 S. Ct. 183, 66 L.

Ed. 2d 185 (1980); Adickes v. S.H. Kress & Co., 398 U.S. 144, 152, 90 S. Ct. 1598,

26 L. Ed. 2d 142 (1970).  "Only in rare circumstances can a private party be viewed

as a 'state actor' for section 1983 purposes." Harvey v. Harvey, 949 F.2d 1127, 1130

(11th Cir. 1992).  Private parties may be viewed as state actors for section 1983

purposes if one of the following three tests is met:  "(1) the State has coerced or at

least significantly encouraged the action alleged to violate the Constitution ('State

compulsion test'); (2) the private parties performed a public function that was

traditionally the exclusive prerogative of the State ('public function test'); or (3) the

State had so far insinuated itself into a position of interdependence with the [private

parties] that it was a joint participant in the enterprise ('nexus/joint action test')."

Rayburn ex rel. Rayburn v. Hogue, 241 F.3d 1341, 1347 (11th Cir. 2001) (citations

and internal quotation marks omitted).  To satisfy this third test, the private party must

be "intertwined in a symbiotic relationship" with the government.  *See* Focus on

Family v. Pinellas Suncoast Transit Auth., 344 F.3d 1263, 1278 (11th Cir. 2003).

"Local governing bodies . . . can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy . . . officially adopted and promulgated by that body's officers." Monell v. Dep't of Soc. Servs. of N.Y., 436 U.S. 658, 690, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). "[A]lthough the touchstone of the § 1983 action against a government body is an allegation that official policy is responsible for a deprivation of rights protected by the Constitution," municipalities also "may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval." *Id.* at 690–91.

A municipality, or functional equivalent thereof, is not liable under section 1983 for injuries caused solely by its employees, McDowell, 392 F.3d at 1289, and may be held liable only when the execution of a government policy or custom causes the injury. City of Canton v. Harris, 489 U.S. 378, 385, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989). There are several different ways of establishing municipal liability under § 1983. A municipality can be liable for an official policy enacted by its legislative body (e.g., an ordinance or resolution passed by a city council). *See* Monell, 436 U.S. at 661, 694–95; McCusik v. City of Melbourne, 96 F.3d 478, 483

(11th Cir. 1996).  Municipal liability may also attach if final policymakers have acquiesced in a longstanding practice that constitutes the entity's standard operating procedure.  *See* Bd. of Cnty. Comm'rs of Bryan Cty. v. Brown, 520 U.S. 397, 403–04, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997); Brown v. City of Ft. Lauderdale, 923 F.2d 1474, 1481 n.11 (11th Cir. 1991).  And a municipality can be held liable "on the basis of ratification when a subordinate public official makes an unconstitutional decision and when that decision is then adopted by someone who does have final policymaking authority."  Matthews v. Columbia Cnty., 294 F.3d 1294, 1297 (11th Cir. 2002).  So not all theories of municipal liability under § 1983 require (or depend on) a single final policymaker.  *See* Hoefling v. City of Miami, 811 F.3d 1271, 1280 (11th Cir. 2016).

When brought by convicted prisoners, claims of deliberate indifference to serious medical needs proceed under the Cruel and Unusual Punishment Clause of the Eighth Amendment.  *See* Gilmore v. Hodges, 738 F.3d 266, 271 (11th Cir. 2013).  Pretrial detainees, however, must proceed under the Due Process Clause of the Fourteenth Amendment.  *See* Dang by and through Dang v. Sheriff, Seminole Cnty. Fla., 856 F.3d 842, 849–50 (11th Cir. 2017) (citations omitted).  Nevertheless, the minimum standard for providing medical care to a pretrial detainee is identical to the

minimum standard required by the Eighth Amendment for a convicted prisoner, and thus the claim is analyzed under the decisional law of both Amendments.  *Id.* at 850 (citation omitted).

Stating a claim of inadequate medical treatment requires satisfying two minima (from which the case law has ultimately derived four requirements).  First, there must be, objectively speaking, conduct by public officials "sufficiently serious" to constitute a cruel or unusual deprivation—one "denying 'the minimal civilized measure of life's necessities.'"  Wilson v. Seiter, 501 U.S. 294, 298, 111 S. Ct. 2321, 115 L. Ed. 2d 271 (1991) (quoting Rhodes v. Chapman, 452 U.S. 337, 347, 101 S. Ct. 2392, 69 L. Ed. 2d 59 (1981)).  Second, there must be a subjective intent by the public officials involved to use the sufficiently serious deprivation in order to punish.  *See* Wilson, 501 U.S. at 300 ("The source of the intent requirement is not the predilections of this Court, but the Eighth Amendment itself, which bans only cruel and unusual *punishment*.  If the pain inflicted is not formally meted out *as punishment* by the statute or the sentencing judge, some mental element must be attributed to the inflicting officer before it can qualify." (emphases in original)).

In the context of denial of medical treatment, each of these minima has been more specifically described as encompassing two subsidiary requirements.  To show

an objectively serious deprivation, it is necessary to demonstrate, first, an objectively "serious medical need[ ]," Estelle v. Gamble, 429 U.S. 97, 104, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976), one that, if left unattended, "pos[es] a substantial risk of serious harm," Farmer v. Brennan, 511 U.S. 825, 834, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994).  A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003).  Second, it is necessary to demonstrate that the response made by the public official to that need was poor enough to constitute "an unnecessary and wanton infliction of pain," and not merely accidental inadequacy, "negligen[ce] in diagnosi[s] or treat[ment]," or even "[m]edical malpractice" actionable under state law, Estelle, 429 U.S. at 105–06.[2]  Similarly, to show the required subjective intent to punish, a plaintiff must demonstrate that the public official acted with an attitude of "deliberate indifference," Estelle, 429 U.S. at 105, which is in turn defined as requiring two separate things:  "aware[ness] of facts from which the inference could be drawn that a substantial risk of serious harm exists [ ] and . . . draw[ing of] the

---

[2] A corollary to this requirement for a great deal more than negligence is that a public official who does act reasonably in response to a serious medical need "cannot be found liable under the Cruel and Unusual Punishments Clause," Farmer, 511 U.S. at 845, "even if the harm ultimately was not averted," id. at 844.

inference," Farmer, 511 U.S. at 837.  Ultimately, there are thus four requirements:  an objectively serious need, an objectively insufficient response to that need, subjective awareness of facts signaling the need, and an actual inference of required action from those facts.  *See* Taylor v. Adams, 221 F.3d 1254, 1258 (11th Cir. 2000).

The denial of a medically prescribed diet may violate the Constitution under certain circumstances.  *See* McDonald v. Hardy, 821 F.3d 882, 890 (7th Cir. 2016); Lopez v. Smith, 203 F. 3d 1122, 1132 (9th Cir. 2000); Robles v. Coughlin, 725 F.2d 12, 15–16 (2d Cir. 1983); Byrd v. Wilson, 701 F.2d 592, 594–95 (6th Cir. 1983); *see also, e.g.*, Marquez v. Woody, 440 F. App'x 318, 324 (5th Cir. 2011) (unpublished); Ayers v. Uphoff, 1 F. App'x 851, 855 (10th Cir. 2001) (unpublished).  However, the failure to offer a special meal tray does not violate the Constitution if the inmate's medical needs are otherwise accommodated, for example, by teaching the inmate how to select foods from the regular food tray to meet prescribed dietary needs.  *See* Startz v. Cullen, 468 F.2d 560, 561–62 (2d Cir. 1972); *see also, e.g.*, Mullins v. Cranston, 205 F.3d 1341, 1999 WL 1206930, at *2 (6th Cir. 1999) (unpublished).

The court will first address Defendants' argument that neither of them is a state actor for purposes of § 1983.  As previously discussed, a private entity is subject to liability under section 1983 when it "performs a function traditionally within the

exclusive prerogative of the state," because it becomes "the functional equivalent of the municipality" under section 1983 when it performs such a function.  Craig v. Floyd Cnty., Ga., 643 F.3d 1306, 1310 (11th Cir. 2011) (alterations and quotation marks omitted).  Providing food to County inmates is a function traditionally within the exclusive prerogative of the County, and Aramark has contracted with the County to perform this function.  Indeed, other district court have found that Aramark is a state actor by performing the traditional government function of providing food service at a jail.  *See* Woodstock v. Shaffer, 169 F. Supp. 3d 1169, 1170 (D. Colo. 2016) (citing cases); Sutton v. City of Philadelphia, 21 F. Supp. 3d 474, 482–83 (E.D. Penn. 2014).  Further, employees of a private corporation which provides services traditionally provided by the state may themselves be liable for constitutional violations.  *See* Woodstock, 169 F. Supp. 3d at 1170–71 (citing Flint v. Ken. Dep't of Corr, 270 F.3d 340, 351–52 (6th Cir. 2001); Rosborough v. Mgmt & Training Corp., 350 F.3d 459, 460–61 (5th Cir. 2003); Smith v. Cochran, 339 F.3d 1205, 1213–15 (10th Cir. 2003); Frazier v. Bailey, 957 F.2d 920, 928 (1st Cir. 1992); Conner v. Donnelly, 42 F.3d 220, 225, 226 (4th Cir. 1994).  Therefore, the undersigned concludes that the state action requirement is satisfied.

The court next addresses Defendants' argument that Wilder's factual allegations fail to state a plausible constitutional violation, or that the alleged violation was caused by Aramark's policy or Hannon's personal conduct.  Accepting as true the facts asserted in the Amended Complaint and the documents attached to it, Wilder has pleaded factual content that allows the court to draw the reasonable inference that Aramark and Hannon are liable for the failure to accommodate Wilder's medical needs.  Wilder's doctors diagnosed him with diabetes and prescribed a diabetic diet.  These facts satisfy the "serious medical need" element of a Fourteenth Amendment claim.  Further, Wilder alleged facts suggesting that both Hannon and Aramark knew that Wilder required a diabetic diet.  Wilder alleged that a Jail official provided Hannon with the order from one of Wilder's doctors prescribing a diabetic diet (*see* ECF No. 31 at 7).  And according to another Jail official's response to one of Wilder's grievances, either Hannon or the Jail official spoke with an official from Aramark, and was told "there is nothing that can be done about [Wilder's] situation" (*see id.* at 15).  Additionally, Wilder's grievance to the commissary director and the director's response suggest that diabetic-compatible items were not available from the commissary (*see id.* at 16).  Furthermore, Wilder alleged that Aramark and Hannon consistently provided him with meals containing items which did not comply with his

medically prescribed diet, and that he had no other option than to eat the food provided by Hannon and Aramark, which caused severe fluctuations in his blood sugar levels. These facts are sufficient to nudge Wilder's Fourteenth Amendment claims against Aramark and Hannon across the line from conceivable to plausible.

As a final matter, the court will address Defendants' argument that neither of them had any control or decision-making authority over whether Wilder received a diet based upon his medical condition. Defendants argue:

> ARAMARK is a private company that has been retained by the Board of County Commissioners, Escambia County, Florida to provide food services to inmates at the Escambia County Jail. In this regard, ARAMARK simply delivers the meals specified in its contract with the Board of County Commissioners, Escambia County, Florida.
> . . . .
> [T]he traditional state function of deciding the various meal options to be provided to the inmates and what specific diet an individual inmate is to receive remains with the Board of County Commissioners, Escambia County, Florida and not with ARAMARK. Indeed, ARAMARK does not have the authority to decide to provide the Plaintiff with his requested relief. Instead, ARAMARK simply delivers the meals specified in its contract with the correctional facility and ARAMARK does not make the decision as to what meals or diets an individual inmate is to receive. Indeed, ARAMARK would gladly serve the inmates at Escambia County Jail a four-star gourmet meal everyday if the Board of County Commissioners, Escambia County, Florida contracted for that service and paid ARAMARK accordingly. Further, it is the Board of County Commissioners, Escambia County, Florida and not ARAMARK that decides which inmates are to receive a specific menu option, such as the standard, religious, vegetarian or medical diet. In this regard, the traditional state function of deciding what type of

meals the inmates are to receive, in what quantities and with which ingredients remains with the Board of County Commissioners, Escambia County, Florida and not with ARAMARK.

(ECF No. 45 at 11–12).

As previously discussed, the court may take judicial notice of matters of public record without converting a motion to dismiss into one for summary judgment. *See* Tellabs, Inc. Ltd., 551 U.S. at 322; Garfield v. NDC Health Corp., 466 F.3d 1255, 1260 n. 2 (11th Cir. 2006) (a district court may take judicial notice of facts capable of accurate and ready determination by using sources whose accuracy cannot reasonably be questioned, including public records); Fed. R. Evid. 201.

The court takes judicial notice of the Agreement for Inmate Food Service PD 13-14.065 ("Contract") entered into between Aramark and the County, a copy of which is attached to this Report and Recommendation. The Contract expressly states that it is a public record (*see* Contract, para. 15). The term of the Agreement covers the period of time when Wilder alleges the alleged constitutional violation occurred. The scope of work includes a provision which states, "Modified diets shall be prepared for inmates when ordered by a physician or designee. Aramark understands and will comply." (*see* Contract, para. 3, Exhibit B, para. 7). This refutes Aramark's

argument that neither Aramark nor Food Service Director Hannon had any control or decision-making authority over whether Wilder received his medically ordered diet.

## V.    CONCLUSION

Accepting the allegations of Amended Complaint as true, and liberally construing them in the light most favorable to Wilder, as the court must at this stage of the case, the undersigned concludes that Wilder's allegations plausibly give rise to an entitlement to relief.  Therefore, the undersigned recommends that the District Judge deny Aramark and Hannon's motion to dismiss.  If the District Judge adopts this recommendation, the court will entertain another request by Wilder to appoint counsel to represent him.

Accordingly, it is respectfully **RECOMMENDED**:

1.    That Defendants Aramark and Hannon's motion to dismiss (ECF No. 45) be **DENIED**; and

2.    That this case be remanded to the undersigned for further proceedings,.

At Pensacola, Florida this 24th day of September 2018.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control</u>.  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**